No. 20,102.

LUTHER C. BAILEY, *Plaintiff*, v. THE CITY OF TOPEKA et al., *Defendants*.

SYLLABUS BY THE COURT.

1. PUBLIC PARK—*Concessions for Lunch Stands and Bathing Facilities— Not Unlawful.* The action of a city in granting to individuals, for pay, exclusive rights within a public park to operate refreshment and lunch stands, and to rent boats and bathing suits and towels and dressing rooms, does not constitute a use of the park for other than public purposes, nor is it in conflict with provisions of the deed of gift by which the city acquired the property, to the effect that it should be used for the benefit of the public, and should be inalienable by deed, gift, lease, or other method.

Bailey v. City of Topeka.

2. SAME—*City Authorized to "Regulate" Parks.* Sufficient power for the purpose indicated is conferred by statutes authorizing the city authorities to "regulate" parks.

Original proceeding in quo warranto. Opinion filed February 12, 1916. Judgment for the defendant.

*A. M. Harvey,* and *J. E. Addington,* both of Topeka, for the plaintiff.

*George P. Hayden,* and *A. C. Bartell,* both of Topeka, for the defendants.

The opinion of the court was delivered by

MASON, J.: The city of Topeka accepted a tract of land given to it for the purpose, and on the condition, that it should be used as a public park, "for the benefit of the health, comfort, and recreation of the citizens of Topeka and their friends, and such other orderly persons as may resort thereto." The deed of gift contained a provision that "said real estate shall be inalienable by said city of Topeka, either by way of deed, conveyance, lease, or in any other manner, and shall be forever held and used for the purposes aforesaid." Luther C. Bailey, who owns land facing on that referred to, brings an original action in this court in the nature of quo warranto, asking that the city and its officers be ousted from the power which they are undertaking to exercise, of using the park for other than public purposes, and in such a manner as to violate the terms of its dedication. The case is submitted upon the pleadings.

Prior to answering the city filed a motion to dismiss, on the grounds, (1) that the court had no jurisdiction to hear the case, (2) that the allegations of the petition did not show an illegal exercise of power, and (3) that the plaintiff had no peculiar or specific interest different from the citizens of Topeka as a whole. The motion was overruled, the first ground being regarded as not well taken, and the others as involving the sufficiency of the petition, and proper to be raised rather by a demurrer than by a motion to dismiss. Whether the plaintiff has or claims any such peculiar interest in the use to which the park is put as to enable him to maintain an action to restrain the city from wrongful conduct in its management

may well be doubted. An abutting owner may sometimes sue to prevent a diversion of public property from the uses for which it was acquired. (*Comm'rs of Franklin Co. v. Lathrop,* 9 Kan. 453; Note, 1 L. R. A. 725.) But whether the plaintiff is within that rule need not be determined, by reason of the conclusion reached on the other branch of the case.

(1) The action of the city of which complaint is made consists of the granting to individuals, for pay, of exclusive rights within the park to operate refreshment and lunch stands, and to rent boats and provide suits, towels and rooms for bathers, at fixed prices. A free dressing pavilion is provided for bathers using their own suits and towels. Apparently there is nothing to prevent any one from using his own boat on the pond, should he so desire. We see nothing in the conduct referred to that is inconsistent with the public character of the park, or that conflicts with the terms of the gift. The exclusive character of the privilege conferred is not the basis of any legitimate objection. For as no one has a right to engage in the activities referred to except by permission of the city, no one is wronged by the monopoly created. The concessions granted do not amount to the leasing of any part of the park. (*The State, ex rel. Attorney General, v. Schweickardt,* 109 Mo. 496, 19 S. W. 47.) Nor do they involve the loss of control over it by the public officers. Clearly it is not inconsistent with the conditions imposed by the donor of the property that visitors to the park should be afforded facilities for obtaining refreshments, for boating and for bathing. No reason exists why they should not pay a fair price for what they eat or drink, or for the boating or bathing equipment they use. The · city might through its employees furnish these conveniences directly, collecting reasonable charges therefor. The fact that a profit resulted would not render the transaction objectionable. The incidental revenue would not characterize the transaction as commercial rather than governmental. Substantially the same result is accomplished by authorizing certain individuals to attend to the business of supplying the wants of the public with respect to the matters referred to, retaining so much of the proceeds as will fairly compensate them for their services and investment, and turning the residue over to the city. The following text, and the cases supporting it, are in point at

least to the extent of indicating that the facilities undertaken to be supplied are appropriate to the conduct of a public park:

"Under a power to control and regulate parks the municipal authorities may provide for the pleasure, amusement, comfort, and refreshment of persons frequenting them, which in their discretion they may do by granting privileges to private persons to furnish food or refreshments, or means of innocent entertainment, with the right to erect necessary structures incident thereto which will not interfere with the rights of the public, and may give a license to use a building in a park for the purpose of a restaurant, which rights and privileges may be made exclusive, the municipality in all cases retaining the right of regulation and control over the manner of conducting the business." (28 Cyc. 938.)

The suggestion is made that, if the present course of the city officers is held to be legitimate, there is nothing to prevent them at their pleasure from turning the park into a mere amusement resort, abounding in alluring catchpenny devices and dominated by a spirit of commercialism. This does not follow. That the power of regulation and management might be so abused as to warrant the interference of a court may be conceded. But we find in what has already been done no close approach to the danger line.

(2) It is argued that special statutory authority would be required to enable the city to pursue the course of which complaint is made. A member of the city commission is designated as the "commissioner of parks and public property." (Gen. Stat. 1909, § 1235, amended by Laws of 1913, ch. 84, § 2.) The commission is empowered to "regulate" parks. (Gen. Stat. 1909, § 1280.) "A park may be devoted to any use which tends to promote popular enjoyment and recreation." (3 Dillon's Municipal Corporations, 5th ed., § 1096, p. 1749.) The furnishing of the conveniences referred to is a proper incident to the management of the park, and the method followed is so naturally adapted to the desired end that it must be regarded as a matter of administrative detail, not necessary to be specifically authorized by the legislature.

Judgment is rendered for the defendants.