No. 45,604

Joseph A. Gage, John D. Gage and Dorothy Gage Tarleton, *Appellants,* v. City of Topeka, a Municipal Corporation, et al., *Appellees.*

(468 P. 2d 232)

Opinion filed April 11, 1970.

*Charles Rooney, Jr.,* of Topeka, argued the cause, and *Charles Rooney, Sr.,* of Topeka, was with him on the brief for the appellants.

*James P. Buchele,* city attorney, argued the cause, and *John Lewis,* former city attorney, and *Donald S. Simons,* former assistant city attorney, were on the brief for the appellees.

The opinion of the court was delivered by

Harman, C.: This action seeks recovery of land by way of reverter because of alleged violation of restrictive covenants contained in a deed of conveyance.

Plaintiffs appeal from summary judgment rendered against them and in favor of the defendants, the city of Topeka and its officers. The parties concede only a question of law was presented to the trial court, the facts not being at issue.

In 1899 the city of Topeka accepted an eighty acre tract of land given it by the heirs of Guilford G. Gage for the purpose and on the condition, that it should be used as a public park, to be known as Gage Park, "for the benefit of the health, comfort and recreation of the citizens of Topeka and their friends, and such other orderly persons as may resort thereto." The deed of gift further contained a provision that "said real estate shall be inalienable by said City of Topeka, either by way of deed, conveyance, lease, or in any other manner, and shall be forever held and used for the purposes aforesaid." It also provided that "upon violation of, or default in,

or non-compliance with any of the conditions aforesaid, the grant hereby made shall be forfeited, and said land and every right thereto or therein shall revert to and become the absolute and exclusive property of said parties of the first part, their heirs and assigns." The property is a part of that which has since been maintained by the city as Gage Park.

In October, 1966, the city entered into a written agreement, the object of complaint in this action, granting to one A. C. McCall the right to construct and operate a miniature train upon the park premises.

Plaintiffs, the heirs of the grantors in the deed of gift, contend this agreement constitutes a conveyance in violation of the provisions in the deed, working forfeiture and reversion of the premises to them.

The agreement in question (with its subsequent modifications) refers to McCall throughout as a "Concessionaire". In it he is given the exclusive right, for a term of sixty months with option to renew, to make available to the public a miniature train ride, this being described as a "concession, right and privilege"; concessionaire is to furnish all equipment, pay all costs of construction, maintenance and operation including proper roadbed, track, train station and other facilities, the train to be a scale model of an "Old Time Steam Train Replica"; the design of the train station is to be approved by the city and its location and that of the railroad track and its length are to be designated by the city; concessionaire may not use any space in the park except that designated by the city; all park alterations incident to construction of the railroad are to be approved by the city prior to commencement of alteration; all facilities shall be maintained in a safe, neat and satisfactory condition; the train is to be operated so as not to interfere with the normal use and enjoyment of the park by the general public; hours of operation shall be as directed by the city; all park rules and regulations are to be obeyed; fees charged for train rides shall be as fixed by the concessionaire and approved by the city; concessionaire is to pay monthly to the city 22½ per cent of the gross receipts derived from rides; if concessionaire is dissatisfied with any order, direction or decision on the part of the city he may appeal therefrom to the mayor and board of commissioners whose decision shall be final; the agreement may not be transferred by the concessionaire and may be terminated by either

party upon thirty days' written notice; in the event of termination of the agreement for any reason concessionaire is to retain his own property placed on the premises but is to restore city premises to their present condition, including, but not to be limited to, leveling, bringing to grade and reseeding all areas involved; concessionaire is to furnish liability insurance on behalf of himself and the city insuring against injury or death in stated amounts.

The agreement also contained these provisions:

### "VIII

"The Concessionaire shall not by virtue hereof be deemed to have become the tenant of the City, or any of the premises herein referred to, nor to have been given or accorded as against the City, the possession of any thereof; but as to such of the premises as he is hereunder entitled to use, he shall be deemed merely to be a licensee permitted to enter therein solely for the purpose of exercising therein the right and privileges hereby granted. Upon any termination of this agreement, the City shall have the right through such means as it sees fit to remove and exclude therefrom Concessionaire and any of Concessionaire's employees, without being deemed guilty of any unlawful entry, trespass or injury of any sort whatever.

". . .

### "XIII

"It is mutually agreed by the parties hereto that in the event title of the City to any land or portion of land to be used by Concessionaire hereunder is adjudged by a Court of competent jurisdiction to be in jeopardy, or to be such that the City is prohibited from allowing such use as contemplated hereunder, then, and in that event, this agreement shall forthwith terminate, and Concessionaire shall, from such time thereafter, have no right, title, interest or claim against the City whatsoever."

Appellants contend the agreement constitutes a lease in violation of the deed of gift, giving rise to a right of forfeiture. They concede that if the agreement be held to be a license, there is no violation and no right of forfeiture.

In 1916 the selfsame deed of gift conveying Gage Park to the city was the subject of litigation in *Bailey v. City of Topeka*, 97 Kan. 327, 154 Pac. 1014. There an adjoining landowner sought, by reason of the provisions in the deed upon which appellants here rely, to oust the city from granting to individuals exclusive rights within the park to operate refreshment and lunch stands and to rent boats, dressing rooms and bathing equipment. This court held such action was not in conflict with the provisions of the deed, saying, "The concessions granted do not amount to the leasing of

any part of the park." (p. 329.) The following text was quoted approvingly:

"Under a power to control and regulate parks the municipal authorities may provide for the pleasure, amusement, comfort, and refreshment of persons frequenting them, which in their discretion they may do by granting privileges to private persons to furnish food or refreshments, or means of innocent entertainment, with the right to erect necessary structures incident thereto which will not interfere with the rights of the public. . . ." (p. 330.)

Appellants argue the *Bailey* case is distinguishable because here the agreement permits improvements of a permanent nature to be made in the park (train station and garage, tracks on a certain grade, trestle, signals, etc.), that it permits exclusive possession to the grantee of part of the premises and by its very nature constitutes a lease. They point to an instance in the agreement in which the term "lease agreement" is used and another in the clause forbidding transfer in which the word "sublet" appears.

As the issue is presented here the basic question to be determined is whether the agreement is a lease or a license.

In 32 Am. Jur., Landlord and Tenant, § 5, we find this:

"Distinctions between Lease, License, and Easement. It is recognized that it is often difficult to distinguish between a license and a lease. A license in the law of real property is defined to be an authority to do some act or a series of acts on the land of another without passing an estate in the land. It amounts to nothing more than an excuse for the act, which would otherwise be a trespass. It is ordinarily not assignable. A demise or lease is more than a license to enter and occupy for a specific purpose, but the fact that the privilege is paid for even by an annual payment does not prevent it from being a license merely. A leasehold, including an estate for years, is an interest in real property. Indeed, the distinguishing characteristics of a lease is that it carries a present interest and estate in the land for the period specified, and the criterion seems to be the right to the possession of the land, and if such right is not conferred, the transaction is to be deemed a license, profit, or easement. A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further, whereas a lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms.

"Whether an instrument is a license or a lease depends generally on the manifest intent of the parties gleaned from a consideration of its entire contents." (pp. 30-31.)

The foregoing accords with our holding in *Smyre v. Kiowa*, 89 Kan. 664, 132 Pac. 209, in which the following was quoted approvingly:

"The test to determine whether an agreement for the use of real estate is a lease or a license is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument." (p. 668.)

The agreement here gives an exclusive right to the grantee to make available to the public a certain type of entertainment but, as in *Bailey*, this limited right is vastly different from a right to exclusive possession of premises against the grantor usually found in a lease. The rights granted are subject to a high degree of control by the city, and subject as well to the normal use and enjoyment of the park by the public. We shall not repeat the substance of those provisos already stated but virtually everything permitted to be done under the agreement must conform to the will of the city. For our purposes here, about all the concessionaire has is the exclusive right to operate as the city may dictate. And the termination clause strongly suggests license rather than lease.

The agreement does contemplate alteration in the terrain and erection of certain type structures (again subject to city approval) but these appear to be insignificant and of insufficient character to affect the essential nature of the transaction. In *Boyd v. Colgan*, 126 Kan. 497, 268 Pac. 794, an agreement denominated a lease gave a right to enter upon land for the purpose of hunting and fishing. The instrument also gave the grantee the right to construct a dam and put down wells on the premises. Despite this aspect of the contract and its name, the instrument was held to be a license and not a lease.

In the case at bar, under the rationale of *Bailey* and the other authority cited, we think the parties intended the agreement to be nothing beyond a license. Hence we hold it not violative of the inalienability clause in the deed.

Appellants further contend the city's action was in violation of the clause in the deed that the premises be used as a park for the benefit of the public. For this position they rely primarily upon cases from other jurisdictions. We have examined those cited but in view of our own precedent and inclination, we decline to follow them.

Appellants' argument essentially is that operation of a miniature train is a commercial enterprise not within the area of recreation authorized in a public park.

In *Bailey v. City of Topeka,* supra, the court considered the commercial aspect of the right granted. It declined to consider this factor a violation of the deed, saying:

"The fact that a profit resulted would not render the transaction objectionable. The incidental revenue would not characterize transaction as commercial rather than governmental." (p. 329.)

The court further quoted approvingly from 3 Dillon's Municipal Corporations, 5th ed., § 1096, p. 1749, as follows:

"A park may be devoted to any use which tends to promote popular enjoyment and recreation." (p. 330.)

In *City of Wichita v. Clapp,* 125 Kan. 100, 263 Pac. 12, this court indicated the wide range of enterprises which have been sanctioned in public parks, saying:

"Under various authorities, the expression 'park purposes' has been held to include a race track, a tourist camp, bridle trails, boating, bathing, refreshment and lunch stands, providing bathing suits, towels and rooms for bathers, dressing pavilion, waiting room for street cars, refreshment and shelter room for the public, grandstand, ball games, baseball diamond, race meets, tennis courts, croquet grounds, children's playgrounds, hotels, restaurants, museums, art galleries, zoölogical and botanical gardens, conservatories, and many other recreational and education facilities." (p. 101.)

We should mention the record before us contains no suggestion of offensiveness to any person or class of persons in the actual operation of the train.

These small "iron horses" have come to be attractive mementos of a once popular but now rapidly vanishing mode of transportation and are most often found in places of scenic or historic interest or simply where people of all ages congregate for sheer fun. For those so inclined they furnish a pleasant means of touring an area for whatever vistas may be afforded. It seems invitingly clear that such universally enjoyed devices, properly regulated, are a form of wholesome recreation that ought not to be declared beyond the pale of "innocent entertainment" contemplated in *Bailey,* and that court interference would be unwarranted. As already indicated, the train in question is not to be operated as to intrude upon other use and enjoyment of the park and its facilities and will remain subject to strict municipal control. We hold the city's action in permitting its operation is consistent with the terms of the grant and does not constitute an unauthorized use of Gage Park.

The trial court ruled correctly and its judgment is affirmed.

APPROVED BY THE COURT.