NOT DESIGNATED FOR PUBLICATION

No. 117,069

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KARI KARST,
*Appellant*,

v.

TIA BLEHM,
and
B&B INVESTMENT PROPERTIES, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Russell District Court; MIKE KEELEY, judge. Opinion filed July 27, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Heather R. Fletcher*, of *Kennedy Berkley Yarnevich & Williamson, Chtd.*, of Hays, for appellant.

*Mark A. Blehm*, of Blehm Law Office, of Russell, for appellees.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.:  This is a landlord-tenant dispute. Upon our review and as explained in this opinion, we affirm the district court in part, reverse in part, and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2014, Kari Karst, as renter, and Tia Blehm, as landlord and sole owner of B&B Properties, LLC (Blehm), signed a one-year lease for an apartment in

1

Russell. The specific lease term began "on August 22, 2014 at 1:00 PM and end[ed] on August 22, 2015 at 8:00 AM." In compliance with the lease terms, Karst paid a security deposit of $325 and a pet deposit of $325—a total of $650.

Eleven months later, on July 22, 2015, Karst sent an email to Blehm, which began: "I have a question about my current lease that will end August 31, 2015. I am planning to move out at that time. . . ." Blehm responded to Karst's query the following day. On August, 14, 2015, Karst again emailed Blehm and stated: "I am beginning to pack some of my things so I can be out by the end of the month and I would like a copy of the checklist that you mentioned. Could you please send a copy to me?" Karst received the checklist via email later that morning.

On August 22, 2015, the date the lease terminated, Karst emailed Blehm to inform her that she had moved out of the apartment and to request repayment of her security deposit. Karst sent another email on September 22, 2015, in which she again requested the return of her security deposit. In this same email, Karst also sought $125.13 for sanitation fees she paid during the term of the lease. When Blehm did not respond, on October 1, 2015, Karst filed a small claims petition against Blehm seeking $1,844.45.

Karst later received $500 of her security deposit in a letter postmarked October 2, 2015. The security deposit disposition form, included with the check, stated that Blehm had deducted $125 from Karst's security deposit for "carpet cleaning" and another $25 for "August Utility Billing." Karst did not cash the $500 check.

After a trial on December 9, 2015, in small claims court, the magistrate judge ruled that Blehm owed Karst $500 and noted "[Karst] has the check from [Blehm] for $500.00 no other money is due." Karst appealed that decision to the district court seeking damages due to the late return of her security deposit. After the trial, the district court affirmed the magistrate's ruling which awarded Karst $500 of her security deposit, but

2

also ordered Karst to pay $1,000 in attorney fees to Blehm. In response, Karst filed a motion to alter or amend, which the district court denied. Karst appeals.

DISCUSSION

On appeal, Karst first contends the district court erred when it found that she gave notice of termination on August 14, 2015, rather than July 22, 2015. The issue of timely notice is determinative of whether Karst is entitled to the return of any of her security deposit.

Generally, when reviewing a mixed question of fact and law, appellate courts apply a bifurcated standard of review. A district court's factual findings are generally reviewed under the substantial competent evidence standard, while its conclusions of law are subject to unlimited review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). Substantial evidence is legal and relevant evidence that a reasonable person would accept as being adequate to support a conclusion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

*Karst provided Blehm a lease termination notice on July 22, 2015.*

Karst and Blehm signed the lease on August 22, 2014. The lease provided that "30 days written notice must have been given to Landlord prior to the date of termination or expiration. If no written notice is received, the security deposit will be forfeited in full."

On July 22, 2015, Karst sent an email to Blehm inquiring about the possibility of moving out by August 1, 2015, so that a co-worker could lease the apartment. In the email, Karst stated: "I have a question about my current lease that will end August 31, 2015. *I am planning to move out at that time* . . . ." (Emphasis added.)

3

Blehm replied the next day, stating there would be a $500 fee for terminating the lease early, and she informed Karst of the move-out process if Karst decided to move-out prior to her lease expiration date. Blehm ended the email by stating "Let me know what you decide."

There was no further communication between Karst and Blehm until August 14, 2015, when Karst emailed Blehm: "I am beginning to pack some of my things so I can be out by the end of the month and I would like a copy of the checklist that you mentioned. Could you please send a copy to me?" Karst received the checklist later that morning.

On August 19, 2015, Karst sent another email to Blehm, saying:

"Yesterday when we were discussing the move out process I was confused about the dates we discussed so I went back and looked through the emails and discovered the dates were incorrect . . . I am ok with leaving the utilities on until August 31, because that is the date that I said I would be out by in my original July 22 notice, even though I will most likely be leaving sooner."

Karst presented this evidence at trial, arguing that she gave notice to terminate the lease by email on July 22, 2015, while Blehm countered that she did not receive notice of termination until the August 14, 2015 email. Upon review, the district court found the parties intended that Karst would move out on August 31, 2015, as set forth in Karst's emails on July 22, 2015, and August 14, 2015. The district court found: "The lease required a 30-day, written termination notice. Actual notice was given August 14, 2015, by e-mail, which may have not met the terms of the lease that required written notice, but the Court accepts it, therefore, the lease terminated [on] September [14,] 2015."

Both parties reprise their arguments on appeal. Upon our review, substantial competent evidence does not support the district court's conclusion. Karst's July 22, 2015

4

email began: "I have a question about *my current lease that will end August 31, 2015. I am planning to move out at that time . . . .*" There is little ambiguity in Karst's July 22, 2015 email. Although Karst mistook the lease's termination date for August 31, 2015, rather than August 22, 2015, the language of her email made very clear that she wished to terminate the lease at the end of its term. Karst's July 22, 2015 email clearly put Blehm on notice that Karst would terminate her lease at the end of the one-year term in late August. The district court erred when it found to the contrary.

*The lease terminated on August 22, 2015.*

Given that July 22, 2015, was the actual notice of termination date, we next consider whether the district court erred in ordering judgment in favor of Karst for only $500 in partial reimbursement of her security deposit. This issue presents two questions: (1) When did the lease terminate? And, (2) did the district court award the proper amount of damages to Karst?

Analysis of the first question requires that we review the terms of the lease. Kansas courts have long recognized that leases are contracts. See *Gage v. City of Topeka*, 205 Kan. 143, 147, 468 P.2d 232 (1970); *In re Tax Exemption Application of American Legion Post No. 81*, 45 Kan. App. 2d 812, 815, 255 P.3d 31 (2011). Appellate courts exercise unlimited review over the interpretation and legal effect of written instruments and are not bound by the lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). As our Supreme Court has recently observed:

5

"'[A]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretation, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citations omitted.]'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

The language of the lease is unambiguous: the lease term was for one-year, beginning on August 22, 2014, and ending on August 22, 2015. Moreover, the lease made clear that failure by Karst to provide 30 days' notice of termination *would not* extend the term of the lease an additional 30 days, but instead result in the forfeiture of the entire security deposit. Nothing from the plain language of the lease supports the district court's finding that the lease terminated on September 14, 2015. On the contrary, the lease terminated on August 22, 2015.

*Blehm's KRLTA violations were not deliberate.*

Karst claims that no deductions should have been made from her security deposit because there were violations of the Kansas Residential Landlord-Tenant Act (KRLTA), K.S.A. 58-2540 et seq., in the lease. Under the lease terms, Karst paid rent in the amount of $325 a month. She also paid a $325 security deposit and an additional $325 pet deposit, for a total security deposit of $650. Blehm deducted $150 from Karst's deposit: $125 for "carpet cleaning" and $25 for "August utility billing." At trial, Karst testified that the amount of the pet deposit violated K.S.A. 58-2550(a), which states that "if the rental agreement permits the tenant to keep or maintain pets in the dwelling unit, the landlord may demand and receive an additional security deposit *not to exceed 1/2 of one month's rent*." (Emphasis added.) Karst believed this violation entitled her to the return of her entire $650 security deposit.

6

The district court agreed that the amount of the pet deposit in the lease violated K.S.A 58-2550(a), but—citing K.S.A. 58-2547(b)—found "there was no evidence" that Blehm knew this provision violated Kansas law and deliberately placed it in the lease agreement. The district court acknowledged that "[b]y statute, the deposit should have only been a total of $487.50, which is $325.00 for monthly rent and $162.50 for pet security deposit," but the district court "allowed" the $125 cleaning fee and $25 utility fee deductions from Karst's $650 security deposit. Ultimately, the district court concluded that Karst should receive only $500 of her security deposit.

On appeal, Karst claims the district court improperly relied on K.S.A. 58-2547(b) when it found Blehm did not *deliberately* include illegal provisions in the lease agreement. Instead, she argues that K.S.A. 58-2550 is controlling and because that statute does not mention *deliberateness*, she should be awarded her full security deposit.

Resolution of this question requires interpretation of K.S.A. 58-2547 and K.S.A. 58-2550. Statutory interpretation is a question of law over which appellate courts exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

A few well known rules provide guidance in the analysis of the meaning of statutes. The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). Appellate courts must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, appellate courts should not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409.

7

In relevant part, K.S.A. 58-2547 states:

> "(a) No rental agreement may provide that the tenant or landlord:
>> (1) Agrees to waive or forego rights or remedies under this act;
>
> . . . .
>
> "(b) A provision prohibited by subsection (a) included in a rental agreement is unenforceable. *If a landlord deliberately uses a rental agreement containing provisions known by such landlord to be prohibited, the tenant may recover actual damages sustained by such tenant.*" (Emphasis added.)

K.S.A. 58-2550 provides:

> "(a) A landlord may not demand or receive a security deposit for an unfurnished dwelling unit in an amount or value in excess of one month's periodic rent. If the rental agreement . . . permits the tenant to keep or maintain pets in the dwelling unit, the landlord may demand and receive *an additional security deposit not to exceed 1/2 of one month's rent.*" (Emphasis added.)

Karst does not focus on the language of these statutes but instead emphasizes the *titles* of the statutes. She notes, first, that K.S.A. 58-2547 is entitled: "Same; prohibited terms and conditions; damages." She then points out that K.S.A. 58-2550 is titled: "Security deposits; amounts; retention; return; damages for noncompliance." Karst reasons that, based on its title, K.S.A. 58-2550 is the "specific statute applicable hereto and therefore . . . is the controlling statute on [this] issue." And, because K.S.A. 58-2550 says nothing about proving *deliberateness*, she asserts the district court erroneously relied on that element when it made its ruling.

Karst properly cites the accepted rule that a specific statute controls over a general statute; likewise, a specific provision within a statute controls over a more general provision within the statute. *Sierra Club v. Moser*, 298 Kan. 22, 54, 310 P.3d 360 (2013). However, she ignores the equally important principle that, when construing statutes to

8

determine legislative intent, appellate courts should consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013).

Employing this latter rule, it is apparent that K.S.A. 58-2547 and K.S.A. 58-2550 are complementary, not conflicting. K.S.A. 58-2547(a)(1) provides that a rental agreement may not require a landlord or tenant to "waive or forego rights or remedies" set forth in the KRLTA. K.S.A. 58-2550(a) provides some of the rights of tenants—specifically, the right to not pay more than one-half of a month's rent for a pet deposit. Subsection (b) of K.S.A. 58-2547 then states that, if a lease contains illegal provisions, those provisions are unenforceable. However, a tenant can recover actual damages *only if* he or she can prove the landlord *knew* the provisions were illegal and *deliberately* inserted them in the lease anyway. Here, there was no showing of deliberateness by Blehm. The district court's decision aligns with this interpretation, and it did not err when it determined Karst was not entitled to the actual damages pursuant to K.S.A. 58-2547(b) for Blehm's violation of K.S.A. 58-2550(a).

*Blehm failed to return the security deposit within 30 days of the lease termination.*

This does not conclude our inquiry, however. Karst also argues she was entitled to more than $500 in damages because Blehm failed to return her security deposit within 30 days of the lease's termination. We agree.

K.S.A. 58-2550 states:

"(b) Upon termination of the tenancy, any security deposit held by the landlord may be applied to . . . the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with . . . the rental agreement, all as itemized by the landlord in a written notice delivered to the tenant. If the landlord proposes to retain any

9

portion of the security deposit for expenses, damages or other legally allowable charges under the provisions of the rental agreement, other than rent, *the landlord shall return the balance of the security deposit to the tenant within 14 days after the determination of the amount of such expenses, damages or other charges, but in no event to exceed 30 days after termination of the tenancy, delivery of possession and demand by the tenant*. . . .

"(c) *If the landlord fails to comply* with subsection (b) of this section, *the tenant may recover that portion of the security deposit due together with damages in an amount equal to 1 1/2 the amount wrongfully withheld*." (Emphasis added.)

At trial, the district court held the lease did not terminate on August 22, 2015, but ended on September 14, 2015. Because Blehm mailed Karst's security deposit on October 2, 2015, the district court erroneously found Blehm did not violate the 30 day requirement found in K.S.A. 58-2550(b).

Based on our review of the law and evidence, Karst is entitled to additional damages because the lease terminated on August 22, 2015, and by law, Blehm had until September 23, 2015, to mail Karst's security deposit to her minus any deductions. K.S.A. 2017 Supp. 60-206; K.S.A. 58-2550(b). Instead, it is undisputed that Blehm mailed the security deposit on October 2, 2015—beyond the 30-day statutory time period. Thus, Karst should have received more than $500 in damages—specifically Karst was entitled to "that portion of the security deposit due together with damages in an amount equal to 1 1/2 the amount wrongfully withheld."

Karst contends that under K.S.A. 58-2550(c), the amount that was wrongfully withheld was her security deposit in the amount of $650. She further argues that she is entitled to not only the return of her security deposit but also statutory damages of one and a half times that amount. On appeal, Blehm does not address this argument, but apparently relies on her contention that the return of the security deposit was not untimely. We conclude that Blehm wrongfully withheld the security deposit of $650, in violation of the time requirements established by K.S.A. 58-2550(b). As a result, Karst is

10

entitled to the return of her security deposit of $650 plus one and a half times that amount as damages required under K.S.A. 58-2550(c). On remand, the district court is directed to award Karst $1,625.

*Neither party is entitled to attorney fees.*

Finally, Karst contends the district court erroneously awarded $1,000 in attorney fees to Blehm. Where a district court has the authority to grant attorney fees, its decision to award them is reviewed for abuse of discretion. *Wiles*, 302 Kan. at 81. A district court's decision constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the court; (2) it is based on an error of law; or (3) it is based on an error of fact. 302 Kan. at 74.

In the district court, Karst argued that she should be reimbursed $125 for sanitation fees she paid to the City of Russell. Blehm agreed that, under the terms of the lease, she was responsible for payment of the sanitation fees and even acknowledged Karst should be reimbursed. As a result, Karst claimed that, because she did not receive sanitation fees at the small claims trial, she was the successful party on appeal in the district court and was entitled to attorney fees.

The district court found that Karst was the appellant in the case, not the appellee, and that Karst was not successful on appeal because, even though she obtained the $500 judgment for the security deposit and sanitation fees in small claims court, "she has obtained nothing more than what was offered prior to the small claims [trial]." The district court ruled that Karst was unsuccessful on appeal and awarded Blehm $1,000 in attorney fees.

K.S.A. 2017 Supp. 61-2709(a) provides: "An appeal may be taken from any judgment under the small claims procedure act . . . If the *appellee* is successful on appeal

11

. . . the court shall award the *appellee*, as part of the costs, reasonable attorney fees incurred by the *appellee* on appeal." (Emphasis added.) Kansas courts have noted: "'With respect to the specific question of attorney fees . . . a prevailing party is the person who has an affirmative judgment rendered in his favor at the conclusion of the entire case.'" *Hodges v. Johnson*, 288 Kan. 56, 71, 199 P.3d 1251 (2009) (quoting *Szoboszlay v. Glessner*, 233 Kan. 475, 482, 664 P.2d 1327 [1983]).

In view of the above findings, it is evident that Blehm does not qualify as the "prevailing party" on appeal. The magistrate judge awarded $500 to Karst at the conclusion of the small claims trial, and, although the district court affirmed this judgment from the small claims court, it erred in doing so. Karst should have been awarded a judgment of $1,625. Thus, Karst, not Blehm, is the prevailing party here. We conclude the district court made an error of law in erroneously awarding attorney fees to Blehm. This ruling is reversed.

However, Karst is not entitled to attorney fees, either. As noted earlier, K.S.A. 61-2709(a) specifically states: "If the *appellee* is successful on appeal . . . the court shall award the *appellee* . . . reasonable attorney fees incurred by the *appellee* on appeal [emphasis added]." Karst may be the successful party, but as the appellant in this case, K.S.A. 61-2709(a) plainly does not allow her an award of attorney fees.

Finally, there is the matter of sanitation fees. The district court ordered, and both parties agreed, that Karst should be reimbursed $125.13 for sanitation fees that were Blehm's responsibility under the lease. The district court's journal entry indicates that Blehm agreed to pay this amount after the small claims trial, but because Karst appealed to the district court, the payment was not made. We affirm that ruling by the district court and direct Blehm to reimburse Karst in the amount of $125.13 for sanitation fees in the event the payment has not been made previously.

12

In summary, the district court is affirmed in part and reversed in part. The case is remanded to the district court with directions to enter judgment in favor of Karst in the amount of $1,625. Karst shall also be reimbursed $125.13 for sanitation fees unless paid previously. The district court's award of attorney fees for Blehm is reversed.

Affirmed in part, reversed in part, and remanded with directions.