# LOGAN ET AL. *v.* TOWN OF SOMERSET ET AL.

[No. 114, September Term, 1973.]

*Decided January 29, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, ▮ SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Harry W. Lerch,* with whom were *Lerch, Pillote & Lerch, Ronald L. Early* and *Roger W. Eisinger, Sr.,* on the brief, for appellants.

*Robert H. Metz,* with whom were *R. Robert Linowes* and *Linowes & Blocher* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The principal questions involved in this appeal from a decree of the Circuit Court for Montgomery County (Moore, J.), dated April 18, 1973, are in regard to a swimming pool erected and maintained by the Town of Somerset (the Town), one of the appellees, in park land of the Town known as "Somerset Park." One of the appellants, John B. Logan, a plaintiff below, is a taxpayer owning the property, 5621 Ogden Road, Chevy Chase, Montgomery County, whose application for membership in the pool was refused by the Town and whose check for membership dues was returned to him. The Dorset Corporation, the other plaintiff below and the other appellant here, is a Maryland Corporation, a taxpayer of the State of Maryland, and the owner of land abutting Somerset Park.

The amended bill of complaint filed by the plaintiffs was for declaratory, injunctive and other relief. The facts are not in dispute and are the subject of a comprehensive and helpful stipulation of the parties. The plaintiffs filed a motion for partial summary judgment and the defendants — the Town, its Mayor, and Members of the Town Council — also filed a summary judgment motion. Both motions were supported by affidavits and affidavits in opposition were filed.

Judge Moore, on August 24, 1972, after hearing arguments and considering trial memoranda, delivered a comprehensive oral opinion from the Bench, giving his opinion on the various questions raised by the seven "Counts" of the amended bill of complaint, the answer, and the stipulated facts. At the conclusion of the oral opinion, Judge Moore stated:

"The Court may have by inadvertence in this

verbal opinion, in which we grant the motion of the defendants for summary judgment and deny the motion of the plaintiffs for partial summary judgment, omitted one or more of the points set forth in the respective counts to which this opinion has been addressed. In the event of an appeal by the plaintiffs from the Court's determination, the Court will have the opportunity and wishes to advise counsel that we will avail ourselves of the opportunity to edit the transcript of this oral opinion and at that time to include in the opinion such additions such as may be required by any inadvertent omissions."

Thereafter, Judge Moore suffered a heart attack from which he fortunately recovered. No revision, however, of his oral opinion was made; and on April 18, 1973, he signed the decree appealed from, which reads as follows:

"In accordance with the Memorandum Opinion of this Court dictated to the Court Reporter in open Court on the 24th day of August, 1972, it is this 18th day of April, 1973, by the Circuit Court for Montgomery County, Maryland, sitting as a Court of Equity,

"ORDERED, that the amended Bill of Complaint for injunctive, declaratory and other relief be and the same is hereby dismissed in accordance with the reasoning set forth in the Memorandum Opinion of this Court filed herein."

We have concluded that the chancellor should have rendered declarations in regard to the matters for which declaratory relief was sought, rather than obliquely incorporating his opinion on these questions into the preliminary recitation of the decree and then *dismissing* the amended bill of complaint. Since we are, however, of the opinion that inasmuch as the facts are not in dispute—being stipulated—and further that Judge Moore's conclusions given in his oral opinion on the various matters for which declaratory relief was sought are correct, we will formulate

the appropriate declarations in this opinion, modify the decree of April 18, 1973, by striking out the dismissal of the bill of complaint and substituting the declarations set forth in this opinion in lieu of that dismissal, and affirm the decree as modified.

As we have stated, the amended bill of complaint contains seven "Counts"[1] alleging various facts and seeking declaratory (and injunctive) relief in regard to the facts alleged in the respective Counts.

In our opinion, it will be clearer and more helpful, in considering the various declarations sought, to follow the format of the amended bill of complaint. We shall consider the relevant allegations and facts under each respective Count, the declaratory relief sought under it, the decision of the chancellor in regard to it, a discussion of the applicable law and conclude with a statement of the proper declaration to be incorporated in the decree of April 18, 1973, as a modification. At the end of the opinion, we shall recapitulate the declarations, which will be a part of the decree as modified.

## COUNT I

Count I has the heading: *"Improper Use and Restriction of Town Park."*

It is alleged in Count I that the Dorset Corporation (Dorset) brings the action as a taxpayer of the Town and as the owner of land in the Town, abutting the 12-acre tract known as Somerset Park; that the defendants (the Town, its Mayor and Councilmen) have caused the construction and operation of "a private membership club swimming pool, known as the Somerset Park Swim Club" in the Town park for which the defendants make an annual charge of $100.00 per family (or $60.00 per individual); that on June 1, 1971,

---

1. "Counts" in the bills of complaint in equity are unknown to the established equity practice in this State. Separate Counts are used in actions at law and in criminal indictments. In equity, the Maryland practice is to divide the bill of complaint into *paragraphs*, with appropriate subparagraphs. The matter is obviously one of form rather than substance. However, we prefer to have adherence by counsel to the established equity practice.

the defendants began the use of the swimming pool; that the defendants adopted a resolution restricting the use of the swimming pool to residents of the Town "thereby tying use and membership to home ownership or residence within the boundaries of the town"; and, that Dorset, its tenants, and guests are "denied the use of the town park land by virtue of the restricted use imposed by the defendants." It is further alleged that Dorset is informed that the defendants are "without authority in law to own or operate a private swim club restricted in the matter as described."

The declaratory relief sought was:

"[T]hat the restriction of a public pool to dues paying members is unlawful; that all fees thus far collected are held in trust for the users and are to be returned to them; and that the plaintiff [Dorset], its tenants, and all inhabitants of the town should be permitted the unrestricted use of the pool facilities." [2]

The Montgomery County Code, 1972, as amended, permits, *inter alia*, in an R-60 zone (one-family, residential), which includes all land in the town:

"Publicly owned or government operated buildings and uses, including community buildings and public parks, playgrounds and other recreational areas." [3]

The Montgomery County Code of 1972, as amended (Montgomery Code), contains no definitions of the words "[p]ublicly owned," "government operated," or "recreational areas."

---

**2.** There are prayers for injunctive relief seeking to halt "further unlawful operations of the pool and facilities" and for other relief. These prayers for relief reoccur in later Counts, but will not be further mentioned in the opinion.

**3.** This provision of the Montgomery County Code of 1972, as amended, is from § 59-36(a) (§ 111-5 of the Montgomery County Code, 1965) which is incorporated into § 59-42(a) of the 1972 Code, which deals with the R-60 zone, through § 59-41(a) of the Montgomery Code. The other limitations in § 59-36(a) are immaterial so far as the present case is concerned.

The appellants point out to us that in its adopting language, the Montgomery Code in § 59-2 (§ 111-1 of the 1965 Montgomery County Code) provides that the zoning for that portion of the Maryland-Washington Regional District in Montgomery County is adopted:

"[F]or the purpose of protecting and promoting the health, safety, morals, comfort and welfare of the present and future inhabitants of the district [the Regional District]. . . . "

They urge upon us from this provision that the words "public" and "government" must "mean at least the public of the district, the county, the state, or the 'general public' as a broad class."

Section 59-36(a) includes "swimming pools, private, subject to regulations for an accessory building" as a *permitted use.* Section 59-41(b), which is incorporated into § 59-42(b), provides, however, that "swimming pool, community" is a use which may be permitted as a special exception.

It should also be observed that in the Charter of the Town, § 83-17 of the Montgomery Code (§ 59-17 of the 1965 Montgomery County Code), it is provided under the heading "General powers":

"The town shall have the power to adopt all such ordinances, resolutions, rules, and regulations not contrary to the Constitution and laws of the State of Maryland or this Charter as it may deem necessary for the good government of the town; for the protection and preservation of the town's property, rights, and privileges; for the preservation of peace and good order; for securing persons and property from violence, danger, or destruction; and *for the protection and promotion of the health, safety, comfort, convenience, welfare, and happiness of the residents of the town* and visitors thereto and sojourners therein."
(Emphasis supplied.)

Judge Moore concluded that the swimming pool in question was "[p]ublicly owned" by the Town and was also "government operated" as a part of Somerset Park and as a recreational area, so that it was a *permitted use* under § 59-42(a) of the Montgomery County Code and was not a community swimming pool requiring a special exception. He was of the opinion that the argument of the plaintiffs, that the $100.00 annual family charge ($60.00 for an individual) was a strong factor militating against the public nature of the facility, was not persuasive, but that the other factors— ownership and operation by the Town — were more persuasive. He observed that membership was, by operation of law, open to every resident of the Town desiring such membership and that such membership is excluded from those who do not maintain a residence in the Town.

In our opinion, Judge Moore's conclusion is correct. The essential nature of the swimming pool in question fits well within the language of the provision of § 59-36(a) (see footnote 3, *supra*) in regard to publicly owned or governmentally operated buildings or uses and is most certainly a recreational area operated within a public park owned by the Town. The Town is a governmental agency operating under an established Charter. Indeed, by the provision of that Charter, already mentioned, the Town would be without power to operate a recreational facility for persons other than residents of the Town. This opinion is in accord with that of the County Attorney for Montgomery County (David L. Cahoon, now a Circuit Court Judge for Montgomery County) in an opinion rendered March 5, 1971.

The declaration as to Count I in the decree, as modified, should be:

Count I. The swimming pool and bathhouse owned and operated by the Town of Somerset is a publicly owned and governmentally operated recreational area in a public park and, as such, it is a permitted use under the provisions of § 59-42(a) of the Montgomery County Code, 1972; the restriction of the use of the swimming pool to dues-paying members resident in the Town of Somerset is lawful; all fees thus far collected are the property of the Town of Somerset

and are not held in trust for the users of the pool and are not to be returned to such users; and only those residents of the Town of Somerset who pay the fees charged for the use of the swimming pool and who comply with all regulations applicable to the use of the pool are entitled to the use of the pool facilities.

## COUNT II

Count II has the heading: *"Pool Built Pursuant to Unlawful Opinion of County Attorney."*

It is alleged in Count II that the Town applied to the Office of the Director of Inspection and Licenses of Montgomery County for a building permit to construct a public bathhouse and public swimming pool on Outlot 2 and part of Outlot 3 in Block 9, Somerset, as a permitted use in the R-60 zone; that on June 1, 1965, the then County Attorney for the County rendered an opinion in regard to the application, indicating that if the pool was open to the general public, no special exception would be needed, but that if the use of the pool was to be limited to the residents of the Town and their guests, then a special exception would be necessary; that thereafter, the Department of Inspection and Licenses denied the Town's application on the ground that the application was for a "community pool" for which a special exception is needed; that on an appeal from the denial of the application to the County Board of Appeals, the Board, on November 10, 1965, affirmed the denial of the application; that no appeal was taken by the Town and the Town has not filed any application for a special exception; that in February, 1970, the Town again filed an application for a building permit to build a "public swimming pool and bathhouse" even though the Town intended to limit the use of the proposed facilities to dues-paying residents of the Town and not to grant the use to the general public; that when Dorset learned of this, it sent formal letters of complaint to the appropriate officials of the Town and of Montgomery County; that, thereafter, in direct contradiction to the previous opinion of the County Attorney, the Office of the County Attorney, on March 5,

1971, ruled that the proposed swimming pool was a permitted use as a "publicly owned or government operated use" and no special exception was required; and that this ruling was contrary to the applicable law and facts, was arbitrary and capricious, and was made without due process of law.

The declaratory relief sought was that the court declare that the words "public" and "government" as used in § 59-36(a) (incorporated into § 59-42(a) through § 59-41(a)) of the Montgomery Code should be defined as "general public" of the Regional District and the "general governments" thereof and that the respective rights of the parties be declared in regard to the authority of the Town "to circumvent the zoning ordinance by constructing private clubs and other facilities under the guise of 'publicly owned or governmentally operated uses.' "

In our opinion, the decision in regard to Count I is controlling so far as the declaratory relief sought in Count II is concerned. In short, the opinion of the Office of the County Attorney on March 5, 1971, was correct as we have indicated.

The declaration as to Count II in the decree, as modified, should be:

Count II. The opinion of the County Attorney, dated March 5, 1971, correctly stated that the proposed swimming pool was a permitted use in the R-60 zone.

## COUNT III

Count III has the heading: *"Unlawful Use and Occupancy Permit."*

It is alleged in Count III that, although the Town, on February 5, 1970, applied for a building permit for a "Public Swim Pool and Bathhouse," received the permit, and constructed such a facility, the Town later applied for and was granted, on May 11, 1971, a use and occupancy certificate for the "Somerset Park Swim Club" rather than for a public pool; that the use and occupancy permit is contrary to the building permit and unlawfully permits a

use not authorized as a permitted use in the R-60 zone; and that Dorset brought "this action immediately upon learning of the issuance of the unlawful use and occupancy certificate."

The relief sought was:

> "That this Honorable Court issue its Declaratory Judgment declaring the use and occupancy permit approved on May 5, 1971, and issued on May 11, 1971, to be contrary to law and void."

On March 5, 1970, the Town received permission from the Department of Inspection and Licenses (Department) by way of Building Permit No. 18152 to "Install public swimming pool and bathhouse, Street No. 5545 Warwick Place, R-60, Lot L, Block 9, Subdivision Somerset Heights, Town Somerset, Election District 7." Furman Builders, Inc. of Rockville was indicated as the "contractor"; the estimated cost was $214,000.00. After construction of the pool was substantially completed, the Town, on April 29, 1971, filed an "Application for Occupancy Certificate" in which under the heading "TRADE NAME" the words "Somerset Park Swim Club" were inserted. This application was approved on May 10, 1971; and, on the next day, the Department issued a Certificate of Final Inspection and Occupancy for the "building located at 5545 Warwick Place Somerset on Lot Pel. A, Block 9, Subdivision Somerset." It recites that this property "has been inspected and found to comply with the provisions of the Montgomery County Building Code and related ordinances." The use to which the building may be put is not stated in the certificate.

This certificate was issued by the Department, pursuant to § 59-11 of the Montgomery County Code, which provides:

> "The director shall make an inspection of the property and shall issue a certificate of compliance and a use and occupancy permit, if the building, structure, alterations, enlargement, conversion, change and use of the building or structure or the

use of the land conforms with the approved plans for which a building or use and occupancy permit has been issued and with the provisions of this chapter."

It thus appears that the purpose of the certificate is to indicate that an inspection of the property has been made and that the building and its intended use comply with the building permit previously issued. The certificate does this. The designation of the trade name of the operation as "Somerset Park Swim Club" in the application for the certificate does not in any way change the nature of the structure or use for which the building permit was issued. Judge Moore considered the insertion of this trade name to have been "essentially an inadvertence" and, in any event, the certificate did not in any way permit a use not authorized as a permitted use in the R-60 zone. We agree with his conclusion.

The declaration as to Count III in the decree, as modified, should be:

Count III. The Certificate of Final Inspection and Occupancy, approved by the Department of Inspection and Licenses of Montgomery County on May 10, 1971, and issued by it to the Town of Somerset on May 11, 1971, is valid and effective and does not permit a use of the property, 5545 Warwick Place, not authorized as a permitted use in the R-60 zone.

## COUNT IV

Count IV has the heading: *"Construction and Use of Pool Are Continuing Violations of Article 23A, Section 9."*

It is alleged in Count IV that Article 23A, Section 9 of Maryland Code (1957, 1973 Repl. Vol.), having to do with the granting of municipal home rule powers to municipal corporations (including the Town), specifically restricts the powers of the Town to provide parks, gardens, playgrounds and other recreational facilities, to facilities approved by the Maryland-National Capital Park and Planning Commission (the Commission) or the authority having jurisdiction

therein; that the Town is within the Metropolitan District, which is under the jurisdiction of the Commission, and is, therefore, subject to the limitations and requirements of Art. 23A, § 9 and may thus provide parks, gardens, playgrounds and other recreational facilities only in accordance with the approval of the Commission; that the Town applied to the Commission for approval, and the Commission granted approval in accordance with Art. 23A, § 9 on May 15, 1963, which approval, in the words of the amended bill of complaint, authorized the acquisition of Somerset Park as "a park for the use and enjoyment of the general public of the Metropolitan district without regard to place of residence, and included no approval for the construction of a pool, a bathhouse, or any other recreational facility"; that the Commission's Resolution of May 15, 1963, has not been supplemented by the Commission, nor has the Commission at any time formally authorized the construction of the recreational facility in the park nor has it authorized the restriction of any part of the park "to use by a swim club with dues paying members"; that the "construction and operation of a restricted swim club and related facilities in the Somerset Park is a direct violation of the resolution of May 15, 1963, and is in violation of the terms and requirements of Article 23A, Section 9"; and that, although the plaintiffs have made continuing complaints to those charged with the enforcement of such laws, the officials have failed to act, thereby leaving the plaintiffs alone to pursue their public rights through this action.

The relief sought was a declaration by the court that the "construction on and use of the park lands ... [was] contrary to the resolution of" the Commission, dated May 15, 1963, and "therefore unlawful."

Article 23A, § 9 provides in relevant part:

"Nothing herein contained shall be construed to confer upon any municipal corporation, as herein defined, located within any ... district, the power by incorporation, charter, ... or otherwise to exercise or perform, divest or duplicate, within its

corporate limits any of the special powers or duties theretofore conferred upon the ... authority or public corporation, created or appointed in accordance with law, to administer any such ... district except that, subject to the consent or approval of the ... authority or public corporation having jurisdiction, any municipal corporation may provide within its corporate limits parks, gardens, playgrounds and other recreational facilities ...."

The Commission is excluded by subsection (b) of § 9 of Art. 23A from the term "municipal corporation." The Commission was designated by the General Assembly in Chap. 780 of the Laws of Maryland, 1959, as amended, as the public corporation having park jurisdiction within the Metropolitan District.

We held in *Prince George's County v. Maryland-National Capital Park & Planning Commission*, 269 Md. 202, 306 A. 2d 223 (1973) that the power granted to the Commission within the Regional District could not be repealed, modified, or amended by a public local law, but only by a public general law. In that case, we reviewed the statutory history of the creation of the Commission and of its powers.

The Commission, on May 15, 1963, passed a Resolution consenting to the proposed purchase or condemnation by the Town of 12 acres of land within the Town's corporate limits "for public park purposes." This Resolution, in relevant part, is as follows:

"WHEREAS, Title VII of the Housing Act of 1961, authorizes the Housing and Home Finance Agency to make grants to States and local public bodies, to assist in the acquisition of land for permanent open space land use, i.e., public works; and

"WHEREAS, 'The Town of Somerset' is an incorporated municipality pursuant to Chapter 58 Montgomery County Code, 1960 Edition, and is authorized to establish and maintain public parks,

gardens, playgrounds and other recreational facilities to promote the health, welfare and enjoyment of the inhabitants of this Town; and

"WHEREAS, The Mayor and Council of the Town of Somerset has by resolution found it necessary and in the public interest to acquire by purchase or condemnation a parcel of land owned by Morton Funger et ux, Hermen Greenberg et ux, Albert H. Small et ux, and Ralph Ochsman, containing 12.000 acres, more or less, and being part of the land acquired by said parties by Deed from William Parreco, et al., dated January 15, 1962, and recorded among the Land Records of Montgomery County, Maryland, in Liber 2928, folio 688 . . . said parcels of land being located within the corporate limits of the Town of Somerset adjacent to and north of the south boundary line of the corporate limits, east of the rear lot lines of certain lots fronting on Warwick Place and south of the rear lot lines of certain lots on the south side of Dorset Avenue; and

"WHEREAS, The area described herein is within the Maryland-Washington Metropolitan District, as established and defined by various Acts of the General Assembly of Maryland, administered by The Maryland-National Capital Park and Planning Commission, and shown as a local park site on the Master Plan of Parks and Recreation Areas, prepared and adopted, pursuant to law, by the said Commission; and

"WHEREAS, Article 23A, Section 9, Annotated Code of Maryland, 1957 Edition, as amended by Chapter 333 of the Laws of Maryland, 1959, provides that any municipal corporation, 'located within any special tax area or district, sanitary district, park or planning district, soil conservation district or other public agency exercising specific powers within a defined area', is not empowered, 'by incorporation, charter, amendment, annexation or otherwise to exercise or perform, divest or

duplicate, within its corporate limits any of the special powers or duties theretofore conferred upon the board, commission, authority or public corporation, created or appointed in accordance with law, to administer any such special tax area or district except that, subject to the consent or approval of the board, commission, authority or public corporation having jurisdiction, any municipal corporation may provide within its corporate limits parks, gardens, playgrounds and other recreational facilities . . ., ' ;

"NOW, THEREFORE, BE IT RESOLVED, That the Maryland-National Capital Park and Planning Commission, acting in its corporate capacity *as the agency responsible for park acquisition and maintenance in the Maryland-Washington Metropolitan District,* pursuant to, and for the purposes of, the provisions of Article 23A, Section 9, Annotated Code of Maryland, 1957 Edition, as amended by Chapter 333 of the Laws of Maryland, 1959, *hereby consents to the proposed purchase or condemnation by the Town of Somerset of 12.000 acres of land, more or less, within the corporate limits of said town for public park purposes,* * * *."
(Emphasis supplied.)

The appellants earnestly contend that inasmuch as the Commission granted permission to acquire the 12 acres in question for "public park purposes" and inasmuch as the Commission has never been requested by the Town to approve the development of the swimming pool in the park land and has never formally given such approval, the construction and maintenance of the swimming pool by the Town is in contravention of the Resolution of the Commission of May 15, 1963.

Judge Moore concluded that the approval by the Commission was not a limited approval, but a complete approval of the acquisition by the Town of the 12 acres for "public park purposes" and that the construction and maintenance of the swimming pool by the Town was

consistent and compatible with the use of the land for such park purposes. We agree with the chancellor's conclusion in this regard.

First of all, it is to be observed that in the second "WHEREAS" clause of the Resolution of May 15, 1963, the Commission noted that the Town is authorized "to *establish* and *maintain public parks ... and other recreational facilities* to promote the health, welfare and enjoyment *of the inhabitants of this Town.*" (emphasis supplied) This indicates to us that the acquisition of the 12 acres for public park purposes was understood to be for the enjoyment of the inhabitants of the Town, not the inhabitants of the Regional District of Montgomery County or of the State of Maryland generally. In short, the words "public park purposes" are limited and defined by the context of the Resolution and the powers granted to the Town, itself, by its Charter.

The appellants rely heavily on the case of *Scanlon v. City of Menasha,* 16 Wis. 2d 437, 114 N.W.2d 791 (1962), as indicating an obligation to refer the matter of the construction and maintenance of the swimming pool to the Commission and to obtain the Commission's approval of that project. In our opinion, this reliance is misplaced. In *Scanlon,* the applicable statute required the municipality involved in that case to refer a proposed sale or acquisition of town park lands to the Planning Commission, and this mandatory requirement was not complied with prior to the effective date of the resolutions and agreements purporting to sell and purchase the land involved. The Supreme Court of Wisconsin — properly in our opinion — held that the resolutions and agreements were void. This case is clearly distinguishable from the present case in that no sale or acquisition of park lands is involved; the Town owns and continues to own the park land on which the swimming pool is located and no required condition precedent to the construction and maintenance of the swimming pool is involved.

Secondly, the construction of a swimming pool is, indeed, a park improvement of a high order. As the Supreme Court

of Kansas aptly stated in *Smith v. Fuest*, 125 Kan. 341, 344, 263 P. 1069, 1070 (1928):

"The contention that a swimming pool . . . is not a proper park improvement is without merit. In fact, a somewhat exhaustive examination of the authorities discloses no case in which one has heretofore had the hardihood to make such a contention. . . . [I]t is hard to conceive of a more appropriate improvement for a city park than a well-constructed modern, sanitary swimming pool."

*See also McLauthlin v. The City and County of Denver*, 131 Colo. 222, 280 P. 2d 1103 (1955); *Nichols v. The City of Rock Island*, 3 Ill. 2d 531, 121 N.E.2d 799 (1954); *Berberich v. Concordia Gymnastic Society*, (Mo. App.) 402 S.W.2d 582 (1966); *Ashworth v. City of Clarksburg*, 118 W. Va. 476, 190 S. E. 763 (1937); and *Biglin v. Town of West Orange*, 46 N. J. 367, 217 A. 2d 135 (1966). *And see* 63 C.J.S. *Municipal Corporations* § 1057, at 687 (1950):

"The construction of a swimming pool in a public park is a 'public improvement,' and comes within the proper and legitimate uses for which public parks are created."

Thirdly, although Dorset brought this matter to the attention of the Commission by its letter of May 7, 1970, enclosing a copy of its letter to the Department, dated May 4, 1970, the Commission took no action in regard to any suggested conflict with its Resolution of May 15, 1963. Indeed, on May 25, 1970, the Commission, by its Vice-Chairman, replied to the Dorset correspondence, stating in part:

"In response to your request, I would like to advise that The Maryland-National Capital Park and Planning Commission has not received a request from the Town of Somerset for the construction of the aforementioned swimming pool and, consequently, has not considered a consent for such construction.

> "I would like to further advise that this letter is in response to the inquiry contained in your letter of May 4th and does not in any way constitute a determination as to whether or not a consent is necessary for the Town of Somerset to erect 'a public swimming pool.' Information concerning this matter will be sent to the Department of Inspection and Licenses only upon a request from that Department."

Again, on August 3, 1970, Dorset wrote the Commission, setting out its position in substantial detail and, again, the Commission, on September 8, 1970, through its Associate General Counsel, replied to the letter of August 3, stating in part:

> "This Commission has attempted to be cooperative and to respond to your numerous letters on the subject of the activities of the Town of Somerset; however, while we appreciate the comments and observations set forth in your past correspondence and in your letter of August 3, we must ask that all requests for resolutions and requests of the Town of Somerset be directed to that body. This agency cannot become embroiled in your controversy with the Town of Somerset or with your problems of definitions and legal interpretations of phrases contained in resolutions passed in 1963 by Somerset.
>
> "As previously indicated in past correspondence this Commission will not undertake to advise the Department of Inspection and Licenses concerning the issuance or revocation of any permit unless specifically requested by that Department."

In sum, it is rather clear that the Commission does not share Dorset's opinion that the actions of the Town in constructing and maintaining the swimming pool are in conflict with the Commission's Resolution of May 15, 1963 — nor do we.

The declaration as to Count IV in the decree, as modified, should be:

Count IV. The construction on and use of the park lands by the Town of Somerset for the swimming pool in question is not contrary to the Resolution of the Maryland-National Capital Park and Planning Commission, dated May 15, 1963.

## COUNT V

Count V has the heading: *"Construction and Use of Pool Violates Requirements of Chapter 70, Montgomery Co. Code and Ordinances Thereunder."*

Count V alleges that § 70-78 of the Montgomery County Code, 1965 (now § 85-67 of the Montgomery Code, 1972), requires referral to and approval by the Commission of the construction of any public buildings or structures as well as the "change of use of any . . . park" by any public body; that the Town has not complied with this provision in regard to the swimming pool and bathhouse facilities; that the Town is within the Regional District and is subject to the applicable zoning ordinance (Chapter 59, Montgomery County Code, 1972) and the applicable subdivision ordinance (Chapter 50, Montgomery County Code, 1972); that the application filed by the Town for a building permit for the swimming pool and the bathhouse fraudulently misrepresented the location of the pool as being in "Lot L, Block 9 of Somerset," which location "does not, in fact, exist"; that, when requested by the County to file a plat with the application which would have shown such location, the Town failed and refused to comply and Dorset and other property owners similarly situated "were therefore misled to believe that the pool was not proposed for its present location"; that the operation of the pool is open on a dues-paying membership basis only which makes it a community pool or a private club pool for which a special exception is required and which constitutes a violation of the building permit granted for the construction of a public pool; that §§ 104-7 and 104-9 of the Montgomery County Code, 1965 (now §§ 50-8 and 50-20 of the Montgomery Code, 1972), prohibit the issuance of a building permit for a structure or

any other construction unless the structure is to be located on a duly recorded lot approved and recorded pursuant to the Montgomery County subdivision regulations, and the Town "willfully and fraudulently constructed the pool and bathhouse facilities in total disregard for and in violation of said requirements as the facilities are not located on a duly recorded lot or parcel"; that these violations have prevented Dorset from a timely or adequate identification of the Town's construction or from adequately assessing the damages it would cause Dorset's property until the construction was completed and the action filed; that Dorset's property is "immediately upstream" from the Town's property and facilities and, under the provisions of Chapter 50 of the Montgomery County Code and Art. 96A of the Maryland Code, the Town was required to have prepared and filed a flood plain study as a part of the subdivision and building permit applications; and that these requirements have been ignored by the Town, which has unlawfully and without approval restricted the flood plain, all of which has permanently damaged Dorset, which was unable to assess adequately the effect of the Town's project and what property will be directly affected by the restriction of the flood plain.

The relief sought was that the chancellor "declare the respective rights of the parties regarding the aforesaid violations."

The chancellor aptly observed that his decision in regard to the public nature of the construction and operation of the swimming pool and bathhouse disposed of many — but not all — of the contentions of Dorset in Count V.

One matter not so disposed of was the contention of the appellants that the Town did not comply with § 59-9 of the Montgomery County Zoning Ordinance, 1972. Section 59-9 requires that every building shall be located upon a lot or lots and that all applications for building permits be accompanied by a plat showing the lot or lots upon which the proposed building is to be erected. The same information is required for applications for a certificate of occupancy.

For greater clarity of our decision in regard to Count V,

we have decided to state in more detail some of the facts mentioned earlier in this opinion with respect to other Counts.

After the Town originally filed an application for a building permit to construct a public swimming pool in the early part of 1965, the Director of the Department sought the opinion of the then County Attorney in regard to whether the Town needed a special exception for the project. The County Attorney, in an opinion dated June 1, 1965, reviewed the applicable zoning regulations for the R-60 zone and concluded that if the pool was to be opened to the general public, there was no need for a special exception since the pool would be a permitted use but if the use of the pool was to be limited to the residents of the Town, then a special exception would be necessary. After denial of the building permit application by the Department, the Town appealed to the Montgomery County Board of Appeals. That Board dismissed the Town's appeal. In its opinion, the Board stated that the proposed facility "falls within the definition of a community swimming pool" and hence a special exception was required under the provisions of the zoning ordinance applicable to the R-60 zone, but then added:

> "Were it not for the undisputed testimony that the use and operation of the subject pool will be paid for by fees, in part, by non-residents of Somerset, this case might fall within the definition of a public swimming pool."

The Town, on December 16, 1965, adopted a Resolution providing, in relevant part, that "in the operation of the proposed Somerset Swimming Pool only residents of the Town of Somerset will be eligible as members."

Thereafter, on February 7, 1966, the Town submitted a second application for a building permit for a "public swimming pool and bathhouse." It identified the location of the land on which the facility was to be built as "5545 Warwick Place," with the nearest street, "Falstone Avenue." After the printed word "Lot" on the application form, the words "Town of Somerset lot" are inserted by typewriting with the words "Parcel A" written over them in ink. After

the printed word "Block," the word and figure "Block 9" are typewritten. After the printed word "Acreage," "2.0 acres" is typed in and, under the line containing the Lot, Block and Acreage data, the words and figures "Plat 7813, Book 78, 5/20/65" are typewritten. After the printed word "Subdivision," the words "Somerset Heights" are typewritten.

The Department approved this application and issued a building permit to the Town on March 10, 1966; but this building permit was never utilized.

The land upon which the swimming pool was proposed to be built — and on which it actually was built — is shown on Plat No. 7813, Plat Book 78 recorded in the subdivision plat records of the Circuit Court for Montgomery County. It is shown as two parcels; the first being identified as "3294/408" apparently referring to the liber and folio deed reference to a deed of gift from Community Somerset Associates to the Town, the second being identified as "outlot 3." Neither of these parcels has been submitted to or approved by the Commission as subdivision lots or as building lots.

The Town submitted its third application for a building permit on February 5, 1970, applying for a "public swim pool and bathhouse." This application identified the location of the building as "5545 Warwick Place," the nearest cross street as "Falstone Avenue," the acreage as "2.0," the Town as "Somerset," the lot as "L 3294/F408," the block as "9," and the subdivision as "Somerset Heights." The application was approved on March 4, 1970, and a building permit, No. 18152, was issued by the Department on March 5, 1970. This building permit granted the Town permission to "Install public swimming pool and bathhouse" at Street No. 5545 Warwick Place, Lot L, Block 9, Subdivision Somerset Heights, Town of Somerset. In paragraph 17 of the agreed statement of facts, it is stated that: "In truth and in fact, the address '5545 Warwick Place' is a dedicated right of way. Nor, in fact, does any lot exist identified 'Lot L, Block 9, Somerset Heights.' " In the same paragraph of the stipulation, it is stated that the "pool, in

fact, is built on 3.0 acres including not only the parcel identified as 3294/408, but also 'Outlot 3.' "

Although there is some confusion in the last application for a building permit in regard to the lot, block and address of the swimming pool, the site plan of the pool, which accompanied the application, sufficiently established the location of the swimming pool for the purposes of the building permit. The Department was able to find and inspect the proposed facility, and it is difficult to perceive how anyone could be deceived in regard to the location of the pool. The identification of some of the six two-acre parcels as outlots on the plat was for identification purposes only and not to indicate that they were "outlots" as defined by the zoning ordinance as unbuildable lots. Nor is there any doubt that the building permit and the plans and specifications were reviewed by the Technical Staff of the Commission so that there was substantial compliance with Section 85-67 of the Montgomery Code, 1972. In sum, even though there may have been inadvertent errors in the application for a building permit and in the building permit itself, no deception or damage to Dorset was established and, therefore, such errors were *damnum absque injuria.*

Dorset also contends that there was a violation of Code (1957, 1964 Repl. Vol.) Article 96A in regard to water resources in that the Town did not file a flood plain study as a part of its application for its building permit. There is no merit to this contention inasmuch as Art. 96A, § 12 requires an accompanying flood plain study only if a waterway is obstructed or if there is a change in the course, current, or cross section of any stream. The swimming pool does neither of these things so that no permit was required.

The declaration as to Count V in the decree, as modified, should be:

Count V. The construction and operation of the swimming pool and bathhouse by the Town of Somerset does not violate in any substantial or prejudicial way any relevant provisions of Chapter 70 (now Chapter 85 of the 1972 Code), entitled "Maryland-National Capital Park and Planning Commission," the Montgomery County Code, or Chapter 50,

entitled "Subdivision of Land" of the present Code, or Article 96A of the Annotated Code of Maryland (1957, 1964 Repl. Vol.).

## COUNT VI

Count VI has the heading: *"Pool Membership Improperly Denied to Members of the General Public."*

It is alleged in Count VI that the plaintiff, John B. Logan, one of the appellants here, as a taxpayer and resident of the Regional District (he resides in Chevy Chase) and as a member of the "public" thereof brings this action; that the Town received a building permit on March 5, 1970, from Montgomery County to construct a public pool, which the Town has now constructed, in a public park known as Somerset Park; that Logan filed an application on May 15, 1971, to use the pool, but his application was rejected because, although he was a member of the general public, he was not a resident of the Town; that, inasmuch as the facility was approved and constructed as a public pool in accordance with the zoning ordinance, Logan believes and alleges that he should have the right to use it and that the "denial of his application is unauthorized and contrary to law."

The relief sought was that the court declare "that the pool was constructed as, and is now, a public pool, determining that the general public may use the pool without unreasonable costs or other restrictions."

The chancellor was of the opinion — as we are — that the prior determination of the nature and character of the swimming pool and the Town's Charter, which enables it to extend the facility *only* to residents of the town, are conclusive of the matter of the Logan membership.

The declaration as to Count VI in the decree, as modified, should be:

Count VI. The plaintiff, John B. Logan, as a nonresident of the Town of Somerset is not entitled to membership in the swimming pool erected and operated by that Town.

## COUNT VII

Count VII has the heading: *"Construction and Operation of Pool by Defendants is Ultra Vires and Unauthorized by Law."*

It is alleged in Count VII that Dorset brings the action as a property owner and taxpayer of the Town; and that the Town, in the construction and operation of the swimming pool in the Town and in the expenditure of Town funds for the use of dues-paying residents of the Town, has "exceeded and violated . . . [its] authority under the Charter of the Town and the Laws of Maryland."

The relief sought was that the court "require the repayment of all funds illegally expended by the defendants to the Town."

The facts indicate that the Town followed the Town Charter in all respects in regard to its financing of the construction and operation of the swimming pool and bathhouse. The chancellor concluded, properly in our opinion, that his prior rulings, in regard to other Counts, disposed of the issue of ultra vires against Dorset.

In addition, this issue was neither briefed nor argued before us and we consider the argument to have been abandoned by the appellants. *Wooddy v. Wooddy,* 256 Md. 440, 261 A. 2d 486 (1970); *W. R. Grace & Co. v. Comptroller of the Treasury,* 255 Md. 550, 258 A. 2d 740 (1969); and *Harmon v. State Roads Commission,* 242 Md. 24, 217 A. 2d 513 (1966). *See also* Maryland Rule 831 c 2, 4.

We shall, however, make a declaration in regard to Count VII.

The declaration as to Count VII in the decree, as modified, should be:

Count VII. The plaintiffs are not entitled to compel the repayment of any funds expended by the Town of Somerset in the construction and operation of the swimming pool and bathhouse.

The chancellor, in addition to his rulings on the various Counts, found that the plaintiffs were barred by laches from

asserting their claims in regard to certain Counts. There is much force in his conclusions in regard to laches; but, in view of our decision on the various Counts, we do not deem it necessary to decide whether the plaintiffs are barred by laches from asserting any of their claims on the various Counts.

Recapitulating, the decree of April 18, 1973, is modified by striking out the provision for the dismissal of the amended bill of complaint and by adding the following so that the decree will read:

"ORDERED that the Circuit Court for Montgomery County, sitting as a Court of Equity, hereby declares in regard to Counts I to and including Count VII in the amended bill of complaint in accordance with the memorandum opinion of this court dictated to the Court Reporter in open court on August 24, 1972, the following:

"Count I. The swimming pool and bathhouse owned and operated by the Town of Somerset is a publicly owned and governmentally operated recreational area in a public park and, as such, it is a permitted use under the provisions of § 59-42(a) of the Montgomery County Code, 1972; the restriction of the use of the swimming pool to dues-paying members resident in the Town of Somerset is lawful; all fees thus far collected are the property of the Town of Somerset and are not held in trust for the users of the pool and are not to be returned to such users; and only those residents of the Town of Somerset who pay the fees charged for the use of the swimming pool and who comply with all regulations applicable to the use of the pool are entitled to the use of the pool facilities.

"Count II. The opinion of the County Attorney, dated March 5, 1971, correctly stated that the proposed swimming pool was a permitted use in the R-60 zone.

"Count III. The Certificate of Final Inspection and Occupancy, approved by the Department of Inspection and Licenses of Montgomery County on May 10, 1971, and issued by it to the Town of Somerset on May 11, 1971, is valid and effective and does not permit a use of the property, 5545

Warwick Place, not authorized as a permitted use in the R-60 zone.

"Count IV. The construction on and use of the park lands by the Town of Somerset for the swimming pool in question is not contrary to the Resolution of the Maryland-National Capital Park and Planning Commission, dated May 15, 1963.

"Count V. The construction and operation of the swimming pool and bathhouse by the Town of Somerset does not violate in any substantial or prejudicial way any relevant provisions of Chapter 70 (now Chapter 85 of the 1972 Code), entitled "Maryland-National Capital Park and Planning Commission," the Montgomery County Code, or Chapter 50, entitled "Subdivision of Land" of the present Code, or Article 96A of the Annotated Code of Maryland (1957, 1964 Repl. Vol.).

"Count VI. The plaintiff, John B. Logan, as a nonresident of the Town of Somerset is not entitled to membership in the swimming pool erected and operated by that Town.

"Count VII. The plaintiffs are not entitled to compel the repayment of any funds expended by the Town of Somerset in the construction and operation of the swimming pool and bathhouse.

"The costs to be paid by the plaintiffs."

*Decree of April 18, 1973, modified as set forth in the aforegoing opinion, and, as modified, affirmed; one-half of the costs to be paid by the appellants, the remaining one-half of the costs to be paid by the appellees.*